David E. PITTMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 10326.

District of Columbia Court of Appeals.

Argued Jan. 12, 1977.
Decided April 11, 1977.

Charles J. Broida, Columbia, Md., appointed by this court, for appellant.

William J. O'Malley, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and William D. Pease, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and FICKLING * and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

After a jury trial, appellant was convicted of first degree murder while armed (D.C. Code 1973, § 22–2401) and possession of a prohibited weapon (D.C.Code 1973, § 22–3214(a)). He was sentenced to life imprisonment on the murder conviction and two to six years' imprisonment on the weapons conviction. He argues three issues on appeal: (1) Did the trial court err in refusing to suppress a shotgun and leather shoulder bag seized from an open closet in the apartment where appellant was arrested? (2) Were four black and white photographs of the deceased lying in the hallway where he was killed improperly admitted at trial? and (3) Did the prosecutor err in asking appellant at trial why he did not tell the police that he had seen an unidentified man run away from the scene after the shooting occurred?

The murder of which appellant stands convicted occurred on February 17, 1975. Appellant and three other persons drove to the victim's home in northeast Washington.

---

* Associate Judge Fickling participated at argument and in post-argument discussions but died March 6, 1977.

Upon arriving appellant and another man left the car and walked to the victim's house. Appellant was carrying, concealed in the leg of his trousers, a twelve-gauge sawed-off shotgun he had removed from a brown leather shoulder bag and assembled. Appellant told the other man to knock on the victim's door, and, after a short wait, the victim opened the door and was shot with the shotgun.

■ Appellant was arrested pursuant to an arrest warrant on March 5, 1975, at his sister's apartment in New York City; he does not challenge the legality of his arrest. After appellant had been placed under arrest and handcuffed, a woman in the apartment (appellant's niece) protested appellant's being taken out of the apartment on a March evening clad only in a pair of trousers. The arresting officer (Detective Jonza) went to the back bedroom with appellant's niece to get some clothes for appellant. In the bedroom the officer went to the open closet and saw on the shelf a brown leather bag with something looking like a pipe or barrel protruding an inch or more from the bag. The officer seized the bag, looked into it, and saw a twelve-gauge sawed-off shotgun broken down into three pieces.

The bag and gun were the subjects of a motion to suppress which was denied by the trial judge who ruled that the items were legally seized from the open closet. After a lengthy jury trial, appellant was convicted of the murder and weapon charges.

The first issue on appeal is whether the trial court should have granted appellant's motion to suppress the gun and bag. We hold that the gun and bag were legally seized under the "plain view" exception to the Fourth Amendment's search warrant requirement and that the motion to suppress was properly denied.

■ In *Brooks v. United States*, D.C. App., 367 A.2d 1297, 1304–09 (1976), we held that the plain view exception involves two separate tests under *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). First, the officers must be lawfully present at the situs of the seizure;[1] this requirement has both temporal and spatial dimensions. Second, the discovery of the evidence must be inadvertent. *Brooks v. United States, supra* at 1305, *citing Coolidge v. New Hampshire, supra,* 403 U.S. at 466, 91 S.Ct. 2022.

■ In the instant case, the officers were present in the living room of the apartment under authority of a warrant to arrest appellant. At the insistance of appellant's niece that more clothes be obtained for appellant, the police officer accompanied the niece to the bedroom to get those clothes.[2] The officer testified that appellant also requested some clothes after the niece insisted that he not be taken to the police station dressed only in trousers, and further that appellant motioned that the clothes were in the back bedroom. Appellant disputes this testimony regarding his actions. Once in the bedroom near the open closet, the officer saw the bag with a barrel or possible barrel sticking out and seized the bag. The officer's presence at the situs of the seizure was lawful in both the space and time dimensions of the plain view exception; he went to a limited area (back bedroom) when he and the other officers were prepared to leave for the police station with appellant. Second, the bag was discovered inadvertently; the officer was not searching for evidence against appellant but was in the process of obtaining clothes for appellant's convenience when he saw the bag in plain view. The New York police had been informed that appellant had

---

1. The "plain view" exception can be applied when a police officer is not *searching* for evidence against the accused, but nonetheless inadvertently comes across an incriminating object and "seizes" it. *Coolidge v. New Hampshire, supra* at 466, 91 S.Ct. 2022, *citing Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

2. The trial judge found that as a safety precaution the officer was warranted in getting the clothes himself rather than having appellant or someone else in the apartment obtain them. *See United States v. Manarite*, 314 F.Supp. 607, 614 (S.D.N.Y.1970), *aff'd*, 448 F.2d 583 (2d Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971).

been seen leaving the District with a sawed-off shotgun in a brown leather bag and that such a gun had been used in the killing. The seizure being lawful, the bag was admissible at trial against appellant.[3] *Walker v. United States*, D.C.App., 318 A.2d 290 (1974).

Appellant's second issue on appeal involves the admissibility of four black and white photographs showing the victim in the hallway where he was murdered. We recently stated the general rule that

> pictures of the decedent in a murder case are admissible, in the discretion of the trial court, so long as they have some probative value and are not intended solely to inflame the jury. [*Womack v. United States*, D.C.App., 339 A.2d 37, 38 (1975).]

Reversal is warranted only upon a showing of an abuse of that discretion. *Maxwell v. United States*, 368 F.2d 735, 739 (9th Cir. 1966). *See generally* Annots., 73 A.L.R.2d 769 (1960) and 159 A.L.R. 1413 (1945).

We have reviewed the pictures in the instant case and while we wonder why the government offered them in evidence in view of the very strong case it otherwise made, we do not find them so gruesome as to create a risk of inflaming the jury. In each picture the fully-clothed victim was lying face down; in only one photo was the back of the victim's head visible. While the pictures show that the victim was lying in a pool of blood, the blood appears only as a small darkened area on the tile floor.

■ The fact that appellant did not dispute where the murder occurred does not render the photographs inadmissible so long as they were in some way relevant, either independently or as corroborative of other evidence. *Bauldree v. State*, 284 So.2d 196, 197 (Fla.1973) (per curiam). Moreover, the fact that the photographs were cumulative

evidence because other witnesses had testified and described the area where the murder occurred does not render the pictures inadmissible provided that their probative value outweighs any prejudice from their use. *Jewell v. State*, 309 N.E.2d 441, 442–43 (Ind.1974); *State v. Parker*, 509 S.W.2d 67, 70 (Mo.1974), *citing State v. Johnson*, 486 S.W.2d 491, 494–95 (Mo.1972). Regarding this issue the trial court said:

> I'm going to admit them because they show the perspective of the size of the hall and the area in which the incident is alleged to have occurred. Each of these pictures shows something a little different by virtue of the angle taken—most specifically, the size of the vestibule area and the relationship to the various apartment doors and the stairway.

The photographs were not so inflammatory as to make them inadmissible and we hold that their admission was not an abuse of the trial court's discretion. *Womack v. United States, supra* at 38; *United States v. Hurt*, 155 U.S.App.D.C. 217, 223, 476 F.2d 1164, 1170 (1973); *Maxwell v. United States, supra* at 740.

■ The final issue raised on appeal involves the prosecutor's asking the defendant on cross-examination whether he ever told the police that he had seen someone flee the murder scene after the shot was fired. The exact question the prosecutor asked, and to which appellant answered "No", was: "Did you ever tell the police that?" Appellant argues that the question involves an improper inquiry into his post-arrest right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government argues that the question referred to appellant's failure to tell the police about what he saw from the date he witnessed it until his arrest two weeks later and that it could

**3.** Appellant's further contention that the prosecutor's "brandishing" the shotgun by mantling and dismantling it five or six times before the jury during closing argument warrants reversal is without merit. Even were we to assume that this use of an important piece of evidence against appellant constituted misconduct, we hold that, given the relative strength of the

government's evidence of guilt, the prosecutor's actions did not rise to the level of substantial prejudice nor did it contribute to the verdict against appellant. *Smith v. United States*, D.C.App., 315 A.2d 163, 166–67, *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974); *Garris v. United States*, D.C.App., 295 A.2d 510, 512 (1972).

properly be so interpreted. That pre-arrest silence, the government argues, is not protected under *Miranda*.

We do not quarrel with appellant's assertion that he had the constitutional right to remain silent once he was arrested. Further, we agree with the government and the trial court below that had the question been clearly limited to and directed at appellant's pre-arrest failure to report a murder he claimed to have witnessed, the inquiry would not have been error, but it does not appear that the ambiguous question asked appellant was so limited. However, we need not decide whether the asserted error found in two lines of a transcript of 1,267 pages was in fact error in light of the court's cautionary instruction to the jury to disregard the question and its answer and in the face of the government's overwhelming evidence of appellant's guilt.[4] *United States v. Agurs,* 427 U.S. 97, 110–114, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976), *citing Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Wycoff,* 545 F.2d 679, 682 (9th Cir. 1976).

*Affirmed.*

---

4. Three witnesses testified about the ride with appellant to the victim's house. One of those three testified that he walked from the car with appellant (who was carrying the shotgun concealed in his pants leg), knocked on the victim's door, and saw appellant shoot the victim. Another of the three testified that on the day after the murder, appellant admitted killing the victim. A fourth witness testified that on the day of the murder, appellant gave him the same shotgun recovered from appellant at his arrest, and because of the smell of powder, the witness, who cleaned the gun, concluded that the shotgun had recently been fired.