Joice E. RUSSELL, Appellant,

v.

UNITED STATES, Appellee.

Nos. 88–1609, 88–1610.

District of Columbia Court of Appeals.

Argued Dec. 12, 1990.
Decided Jan. 31, 1991.

Richard S. Stolker, appointed by this court, for appellant.

Glenn F. Ivey, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant appeals her convictions by a jury arising out of a murder and violation of the Bail Reform Act (BRA), D.C.Code

§ 23–1327(a) (1989),[1] on the grounds that the trial judge abused his discretion in refusing to sever appellant's trial from that of her codefendant, and to sever the Bail Reform Act charge. Appellant also contends that she was prejudiced by the judge's instruction to the jury on the codefendant's absence from trial, by the improper admission of a photograph of the decedent, and because there was insufficient evidence of causation. We affirm.

I.

The grisly facts of the murder of William Jefferson, appellant's ex-boyfriend and a drug dealer, were related through the testimony of Denise Lewis, an eyewitness to the murder. According to Ms. Lewis, on August 30, 1986, she went to the decedent's apartment at 54 Galveston Street to purchase $50 worth of cocaine. Lewis performed oral sex in exchange for the cocaine, and she and the decedent then smoked cocaine for several hours.

During this time, Jefferson received three telephone calls. During the second call, Jefferson screamed to the person on the other end, "you owe me, you owe me, hell I'm not giving you shit," and later during the third phone call, he yelled, "you want to come over here and get this Goddamn shit and you owe me money, Goddamn it, come and get it."

Some time thereafter, appellant arrived at the apartment. Appellant asked Jefferson "where is the package," and Jefferson responded, "where is the money?" Appellant said that she did not have the money, but that there was a girl waiting in the car who was interested in purchasing the package, and that she would go to her car and bring back the customer with the money.

A few minutes later Lewis heard a knock on the door, and as Jefferson unlocked the door, appellant and her boyfriend, John Thacker, burst in. Thacker moved towards Jefferson yelling, "hold it right there, mother———, didn't I tell you don't ——

---

**1.** In addition to her conviction for violation of the Bail Reform Act, appellant was convicted of two counts of first degree burglary while armed, D.C.Code §§ 22–1801(a), –3202, armed robbery, *id.* §§ 22–2901, –3202, three counts of first degree felony murder while armed, *id.* §§ 22–2401, –3202, and first degree premeditated murder while armed, *id.* §§ 22–2401, –3202.

with Joice." Lewis saw Thacker pull a knife out of a sheath, and Lewis fled to the kitchen. Appellant followed her and threatened Lewis with a knife, saying "where are you going bitch, I will kill you." After Lewis told appellant that she was scared, and she did not know Jefferson well, appellant put the knife away, and went back to the living room.

Lewis, watching from the kitchen, saw Thacker standing over Jefferson, who was lying on his back. Thacker asked Jefferson repeatedly, "where is it at?" Thacker then ordered appellant to "... gag his mouth." Lewis saw appellant putting something, possibly a spoon, into Jefferson's mouth.

When appellant subsequently removed the object from Jefferson's mouth, Jefferson continued to protest that he did not have anything. Thacker told Jefferson that, "if you don't give it to me, I will slash your God-damn eyes out." Lewis then heard Jefferson say, "my face, my face," and noises like there was fighting going on. She then saw Jefferson with slashes on his face, legs and chest stumbling toward the curtains. Thacker followed him, stabbed Jefferson repeatedly in the stomach, and Jefferson fell face down, apparently dead or dying.

While Thacker ransacked the apartment, appellant searched for cocaine, and found some traces of cocaine on the dining room table which she proceeded to smoke. Appellant asked Lewis if she knew where Jefferson hid the cocaine; Lewis said she did not know. After Thacker completed ransacking the apartment, appellant told Lewis to get ready to leave, pulled out her knife and told Lewis to remain calm. The three left the apartment and drove away in

Thacker's van. Appellant told Lewis not to mention what she had seen in the apartment, and Thacker dropped Lewis off at an abandoned building.

Lewis also testified that she never saw Thacker threaten or in any way harm appellant.[2]

Appellant testified that she had gone to Jefferson's apartment on the night of the murder, and was present when Thacker stabbed Jefferson. Her defense was duress, that Thacker forced her to participate, and innocent presence, that she did not give any assistance to Thacker. She related several occasions when Thacker had threatened her, claimed that she was afraid of him and that Thacker prevented her from leaving Jefferson's apartment. She denied that she had a knife, and that she had threatened Lewis with a knife. She claimed that she did not give any encouragement or assistance to Thacker, nor take anything from the apartment.

Appellant did not appear at her scheduled trial date, and was indicted under the Bail Reform Act.[3] The charges were consolidated and the trial judge denied appellant's motions to sever the BRA count and also to sever her trial from that of Thacker, her codefendant. Appellant entered a conditional guilty plea on the BRA charge, and was subsequently convicted by the jury of the remaining charges.

## II.

■ Appellant contends that the trial judge abused his discretion in refusing to sever her trial from the codefendant's trial after her codefendant's absence halfway through the trial. She maintains that she was prejudiced by the joint trials since the

---

2. Besides Lewis' testimony, the government presented other evidence linking appellant to the crime and rebutting her defenses of duress and innocent presence. Lewis testified that she had seen Jefferson with a "stack of money." The police did not recover any money from Jefferson's apartment, but shortly after the murder, appellant began repaying some of her debts.

In addition, Monique Mitchell, a friend of both appellant and Jefferson, testified that the day after Jefferson's murder, appellant and

Thacker came to her apartment. Thacker related the details of the killing and told Mitchell, in appellant's presence, that he had stabbed Jefferson. Appellant did not dispute Thacker's account, and stated that she had been there and had cleaned up the mess and the fingerprints. Appellant, according to Mitchell, showed no remorse.

3. Appellant was present during trial. Her codefendant, Thacker, disappeared mid-trial and the trial continued in his absence.

jury could use her codefendant's absence to infer his guilt as well as her own. She contends the trial judge compounded the prejudice by giving an erroneous and confusing jury instruction that it was permissible to take into account the codefendant's absence in assessing appellant's guilt. While we agree that the trial judge's instructions were partially erroneous and confusing, we find no abuse of discretion by the trial judge in denying a severance, and conclude that any prejudice from the instruction was insufficient to warrant reversal of appellant's convictions.[4]

■ Defendants may be tried together "if they are alleged to have participated in the same act or transactions constituting an offense or offenses." D.C.Code § 23–311 (1989). If a defendant is prejudiced by a joinder, the judge may, in his or her discretion, grant a severance of the defendants. Super.Ct.Crim.R. 14. "The grant of denial of a motion for severance is within the sound discretion of the trial court, and this court will only reverse upon a showing of an abuse of discretion." *Sousa v. United States*, 400 A.2d 1036, 1041 (D.C.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). When, as here, the defendants are charged with jointly committing crimes, a strong presumption exists that they will be tried together. *King v. United States*, 550 A.2d 348, 352 (D.C.1988). Exceptions exist when the evidence of a defendant's complicity in the crime is *de minimis* as compared to his codefendant, *Bush v. United States*, 516 A.2d 186, 192 (D.C.1986), under certain circumstances where the defendant wishes to call a codefendant as an exculpatory witness, *King, supra*, 550 A.2d at 352, or "when the defendants offer conflicting and irreconcilable defenses so that the jury 'will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Johnson v. United States*, 398 A.2d 354,

368 (D.C.1979) (quoting *Rhone v. United States*, 125 U.S. App.D.C. 47, 48, 365 F.2d 980, 981 (1966)). None of the exceptions applies here, and we are unpersuaded by appellant's contention that the jury would necessarily infer appellant's guilt from her codefendant's absence.

■ A jury is allowed to consider flight or the absence of a defendant from trial as a factor in determining that defendant's guilt or innocence. *Williamson v. United States, supra*, 445 A.2d at 981. Appellant's "continued presence, by contrast, could have been viewed by the jury as belief in [her] own innocence," *United States v. Lobo*, 516 F.2d 883, 884 (2d Cir.), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), especially where, as here, her fate was not so inextricably linked to her codefendant that his guilt necessarily implied her own guilt. *Id.* at 885 The jury could find her innocent on the grounds of duress and innocent presence even if it found her codefendant guilty. These circumstances do not suggest that because of the codefendant's absence, the jury would unjustifiably infer that both are guilty. *Johnson, supra*, 398 A.2d at 368.

■ Likewise, we find no abuse of discretion by the trial judge in refusing to sever the trial of appellant on the ground that the evidence was more damaging with respect to her codefendant. Severance is not required where there is simply more evidence to convict one codefendant; "[m]anifest prejudice occurs only where the evidence of a defendant's complicity in the overall criminal venture is *de minimis* when compared to the evidence against his codefendant." *Bush, supra*, 516 A.2d at 192 (quoting *Christian v. United States*, 394 A.2d 1, 21 (D.C.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979)). The evidence of appellant's participation in the murder was more than *de*

---

**4.** We find meritless appellant's contention that the trial judge abused his discretion in refusing to sever the BRA charge from the other charges. Appellant contends that this was prejudicial because the jury was allowed to consider "other crimes" evidence. Since appellant's failure to appear for trial would have been admissible at a

separate trial for the murder, robbery, and burglary charges, *Williamson v. United States*, 445 A.2d 975, 981 (D.C.1982); *Grant v. United States*, 402 A.2d 405 (D.C.1979), the denial of the motion for severance did not prejudice appellant. *See Drew v. United States*, 118 U.S. App.D.C. 11, 16, 331 F.2d 85, 90 (1964).

*minimis.* An eyewitness placed appellant in Jefferson's apartment and described her actions in assisting her boyfriend, Thacker, who stabbed Jefferson, including that appellant had threatened the eyewitness with a knife, helped Thacker gag the eyewitness, "cleaned up the mess," and then searched the apartment for cocaine. A friend of appellant's also testified that appellant had admitted her participation in the crimes. See note 2, *supra.*

■ Appellant contends, however, that the problem was exacerbated by the instructions to the jury.[5] At the conclusion of the trial the judge instructed the jury on flight.[6] Appellant did not object to the instructions, and thus must demonstrate plain error. *Murchison v. United States,* 486 A.2d 77, 82 (D.C.1984). That appellant has failed to do.

On its face the instruction is confusing because the judge did not make clear that the jury should not consider Thacker's absence in assessing appellant's guilt.[7] The reference to appellant's failure to appear in court is perplexing; the judge was apparently combining an instruction on Thacker's absence after the trial had started and appellant's failure to appear at her initial trial date. See *supra* note 3. Also, the use of the word flight was imprecise at best since there was no indication that Thacker had actually fled the jurisdiction. Nevertheless, viewing the instructions as a whole we find no reversible error.

First, the judge also instructed the jury that:

> Each defendant is entitled to have his or her guilt or innocence as to each of the crimes charged determined from his or her own conduct and from the evidence which applies to him or her, as if he or she were being tried alone. The guilt or innocence of any of the crimes charged should not control, or influence, your verdict with respect to the other defendant.

This instruction helped to mitigate any prejudice from possible jury confusion regarding whether they should consider Thacker's absence in assessing appellant's guilt. *See Murchison, supra,* 486 A.2d at 82. Second, the judge had instructed the jury during the trial, when Thacker failed to reappear, that it was "to draw no conclusions one way or another from his absence." Finally, as noted, the evidence against appellant was overwhelming. *See Bush, supra,* 516 A.2d at 192.

---

**5.** As a threshold matter, appellant contends that, under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), a limiting instruction is insufficient to dissipate the prejudice resulting from the consolidation of defendants' trials. This is simply an overly broad and incorrect reading of *Bruton.* *United States v. Hyson,* 721 F.2d 856, 864 (1st Cir.1983); *Lobo, supra,* 516 F.2d at 884.

**6.** The judge instructed the jury:
> And finally, ladies and gentlemen, concluding part one of my instructions, flight by a person after a crime has been committed, or after he or she has been accused of a crime, may be motivated by a variety of factors which are fully consistent with innocence. It does not create a presumption of guilt, nor does a person's flight necessarily reflect feelings of guilt.
> Furthermore, since innocent persons sometimes have feelings of guilt, such feelings do not necessarily actually—not necessarily reflect actual guilt.
> While you may consider flight as one circumstance tending to show feelings of guilt and you may also consider feelings of guilt as evidence tending to show actual guilt, you are

not required to do so. Under no circumstances may you presume a defendant's guilt from his *or her* flight, or failure to appear in court as required. You should consider and weigh evidence of flight by a defendant in connection with all the other evidence in the case, and give it such weight as, in your judgment, it is fairly entitled to receive.
> *Also, in that connection—I'm referring only to testimony with respect to the defendant Russell—failure to appear in court: As I've told you, you are not to consider the absence of Mr. Thacker from this trial in any way whatsoever.*
> (Emphasis added.)

**7.** An example of clear instructions is in *Hyson, supra,* 721 F.2d at 864, where the trial court stated:
> Hyson has not been present during this trial, and I think that was, except for the first day, and this instruction that I am giving to you now I want to make clear to you does not apply in any way whatsoever to any of the other defendants in this case. I'm speaking only of Mr. Hyson. Is that perfectly clear, members of the jury? You all indicate "Yes."

## III.

■ Appellant further contends that the trial judge erred in admitting into evidence a color photograph taken of the decedent four days after his death. The government proffered that the picture was relevant to impeach appellant's testimony on direct examination that Jefferson was wearing khaki colored Bermuda shorts with a fly front whereas the photograph showed him in a pair of white running shorts. Appellant contends that the photograph was not probative of any relevant fact since on cross-examination, when confronted with the photograph, she admitted that she was wrong and that Jefferson was wearing white running shorts. Hence, she contends the introduction of the evidence was unnecessary in light of this admission and was prejudicial since it showed Jefferson's body in a discolored and swollen state.

The determination whether to admit photographs lies within the discretion of the trial judge, and this court will reverse only if there has been an abuse of such discretion. *Hammond v. United States*, 501 A.2d 796, 798 (D.C.1985). As a general rule "pictures of the decedent in a murder case are admissible, in the discretion of the trial court, so long as they have some probative value and are not intended solely to inflame the jury." *Pittman v. United States*, 375 A.2d 16, 19 (D.C.1977) (quoting *Womack v. United States*, 339 A.2d 37, 38 (D.C.1975)). Even where photographs are cumulative "in light of the testimonial evidence," they may still be admissible "provided that their probative value outweighs any prejudice from their use." *Hammond, supra*, 501 A.2d at 798 (quoting *Pittman, supra*, 375 A.2d at 19).

Appellant's testimony on cross-examination not only rendered the photograph cumulative, it diminished if not completely undermined any significant probative value. The test of relevance for impeachment purposes is "not necessarily whether the [evidence] will shed light on a material issue, but whether the answer will assist the trier of fact in evaluating his [or her] credibility and in assessing the probative value of the witness' direct testimony."

*Brown v. United States*, 409 A.2d 1093, 1099 (D.C.1979). As the trial judge noted, appellant's direct testimony had already been impeached on cross-examination when she admitted that the shorts were white running shorts instead of khaki Bermuda shorts.

The government contends, however, that because appellant began to equivocate about the color of the pants, the photograph was important impeachment evidence. We have doubts, but are satisfied that any error in the admission of the photographs would have been harmless. The photograph was not so gruesome as to risk inflaming the jury. *See Pittman, supra*, 375 A.2d at 19. Jefferson's face is not visible, and while the body is bloated and discolored, the knife wounds and slashes described by Lewis are not visible. The brutality and grisly nature of the crime had already been described in sufficient detail by Lewis; her testimony provided "a far greater emotional wallop," *Dixon v. United States*, 565 A.2d 72, 75 (D.C.1989), than the photograph. And, as noted, the government's case against appellant was very strong. *See Letsinger v. United States*, 402 A.2d 411, 417 (D.C.1979).

## IV.

■ Finally, we find meritless appellant's contention that the government failed to prove causation since its evidence did not rule out that death was caused by the decedent's own actions, the ingestion of cocaine and alcohol in lethal doses.

First, we disagree with appellant's interpretation of the government's evidence. There was sufficient evidence for the jury to find causation beyond a reasonable doubt. *Washington v. United States*, 475 A.2d 1127, 1129 (D.C.1984). Dr. Pierre-Louis, the government's expert witness, did testify that at the time of death the decedent had ingested "ten times the lethal level" of cocaine. But, in reply to a question whether the cocaine caused the death, she opined that the cause of death was the stab wounds.

Second, even if the decedent's actions contributed to his death, this would not

preclude a finding that there was sufficient evidence that the wound inflicted by appellant substantially contributed to Jefferson's death. *See Hopkins v. United States,* 4 U.S. App.D.C. 430 (1894); *United States v. Hamilton,* 182 F.Supp. 548, 550–51 (D.D.C.1960). The government met its burden to prove proximate cause since the decedent's death was a reasonably foreseeable consequence of the stab wounds. *See McKinnon v. United States,* 550 A.2d 915, 918 (D.C.1988).

Accordingly, because, as the government concedes, some of the convictions merged,[8] we remand the case to the trial court to vacate one of the burglary convictions and the three felony-murder convictions, and otherwise affirm.

*So ordered.*

---

**8.** Specifically, the government concedes that upon remand the trial court should vacate one of the burglary counts and the three felony murder counts, leaving conviction for one count of first-degree burglary while armed, one count of armed robbery, one count of first-degree premeditated murder while armed, and one count for violating the Bail Reform Act.