Harold REAVES (No. 93–CF–131), and Edward L. Huff (Nos. 93–CF–250 and 95–CO–1449), Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 93–CF–131, 93–CF–250 and 95–CO–1449.

District of Columbia Court of Appeals.

Argued April 3, 1997

Decided May 8, 1997.

---

Mark J. Rochon, Washington, DC, for appellant in No. 93–CF–131.

John A. Shorter, Jr., Washington, DC, for appellant in Nos. 95–CO–1449 and 93–CF–250.

Michele A. Roberts, Washington, DC, filed the brief, for appellant in No. 93–CF–250.

Rachel Adelman Pierson, Assistant United States Attorney, with whom H. Marshall Jarrett, Acting United States Attorney, and John R. Fisher, Roy W. McLeese, III, Patricia M. Haynes, and Alan M. Boyd, Assistant United States Attorneys, were on the brief in Nos. 93–CF–131 and 93–CF–250; and with

whom J. Ramsey Johnson, Acting United States Attorney, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief in No. 95–CO–1449.

Before FERREN, STEADMAN, and KING, Associate Judges.

KING, Associate Judge:

Harold Reaves and Edward Huff were tried together and each convicted of armed first degree murder, carrying a pistol without a license, and possession of firearm during a crime of violence,[1] for the shooting death of Leondos Wilkins on April 26, 1990. At the same trial, Reaves was also convicted of carrying a pistol without a license on May 31, 1990.[2]

Both Reaves and Huff contend that the trial court erred by: (1) denying their motions for judgment of acquittal for the August 26 offenses, where they claim the primary government witness was inherently incredible and was impeached with three felony convictions, and where other government witnesses were drug users whose accounts were materially impeached; (2) admitting into evidence a crime scene photograph showing a shell casing in a large pool of the victim's blood; and (3) allowing the prosecutor to state, in her rebuttal to the defendants' closing arguments, that the defendants failed to seek identification testimony from certain government witnesses who had not been asked by the government to make in-court identifications of the defendants. Reaves separately contends that the trial court erred by convicting him of the May 31, 1990 weapons charge where another individual had already pleaded guilty to the same charge in the same incident involving the same weapon, and no evidence, other than that individual's testimony, linked Reaves to the weapon. Huff separately contends that the trial court erred by: (1) denying his motion to sever where there was an allegedly vast disparity in the amount of evidence against Huff and his co-defendant Reaves, there was evidence that Reaves threatened witnesses, and where the May 31 weapons charge did not involve Huff; (2) refusing to instruct the jury that some of the evidence was only admissible against Reaves; and (3) instructing the jury on an aiding and abetting theory of culpability. Finally, in a separate collateral attack, Huff contends that his ineffective assistance of counsel motion[3] was improperly denied without an evidentiary hearing. We affirm in both direct appeals, but remand the case for further proceedings in the collateral attack.

I.

Four eyewitnesses to the murder testified at trial. Although their accounts varied in some respects, the testimony of the witnesses established that on April 26, 1990, two or three individuals came to the area of 13th & K Streets, S.E., approached the victim Wilkins as he stood near or sat in an Isuzu Trooper, and at some point one or more of the individuals began firing at Wilkins. Three of the witnesses, all of whom knew Reaves and Huff prior to the incident, identified Reaves as one of the shooters. One of these witnesses, Pernell Matthews, testified that he saw both Reaves and Huff shoot at Wilkins. Another witness testified that Huff stood near Reaves, but did not otherwise participate, as Reaves shot Wilkins. A third witness testified that she saw Reaves shoot Wilkins but did not recall seeing Huff during the incident. A fourth eyewitness was unable to identify either Reaves or Huff. The government presented forensic evidence showing that more than twenty rounds of expended ammunition, from three different weapons, were recovered from the scene of the shooting. Wilkins bled to death from multiple gunshot wounds to the head, chest, back, arm and hand; expert testimony connected portions of three slugs recovered from Wilkins's chest and skull to a nine millimeter Uzi which was recovered from Reaves's girlfriend's car in the May 31, 1990

---

1. D.C.Code §§ 22–2401, –3202, –3204(a), and –3204(b) (1996 Repl.).

2. D.C.Code § 22–3204(a) (1996 Repl.).

3. D.C.Code § 23–110 (1996 Repl.).

incident and which the girlfriend testified belonged to Reaves. There was other testimony establishing that Reaves was previously seen with an Uzi and that the weapon Reaves fired at Wilkins was an Uzi. The carrying a pistol without a license charge of May 31, 1990, stemmed from the recovery of the Uzi on that date from his girlfriend's car.

▮ None of the claims by either appellant in their direct appeals have merit; accordingly we summarily affirm the convic-

tions of both appellants.[4] For the reasons stated below, we remand the case in No. 95–CO–1449 to the trial court for further proceedings on Huff's ineffective assistance of counsel claim.

## II.

Huff's collateral attack on his conviction under D.C.Code § 23–110 focused on his claim that his trial counsel[5] improperly chose to forego the use of a prior inconsistent

**4.** "In reviewing a denial of a motion for a judgment of acquittal, this court must view the evidence in the light most favorable to the government," *Patton v. United States*, 633 A.2d 800, 820 (D.C.1993), "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact from both direct and circumstantial evidence." *Thompson v. United States*, 567 A.2d 907, 908 (D.C.1989) (citation omitted). We will reverse only if there is "no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Head v. United States*, 451 A.2d 615, 622 (D.C. 1982). We are satisfied that the evidence was sufficient to support all the convictions arising from the April 26 shooting.

After reviewing the challenged photograph of an expended round of ammunition in a pool of blood, we conclude there was no abuse of discretion by the trial court in admitting the photograph. *See Russell v. United States*, 586 A.2d 695, 700 (D.C.1991) (admission of photographs lies within the discretion of the trial judge); *Thacker v. United States*, 599 A.2d 52, 58 (D.C. 1991) (photograph not excludable merely because it is cumulative of testimonial evidence).

Appellants' contention regarding the prosecutor's closing arguments is reviewed for plain error because neither appellant objected to the allegedly improper statement at trial. *See Harris v. United States*, 602 A.2d 154, 159 (D.C.1992) (en banc). We find no plain error here. *See Allen v. United States*, 603 A.2d 1219, 1224 n. 11 (D.C.1992) (en banc) (prosecutor may comment on defense counsel's failure to counter or explain evidence); *Coleman v. United States*, 515 A.2d 439, 450 (D.C.1986) (prosecutor may respond, in rebuttal, to defense counsel's assertions); *accord, Harris, supra,* 602 A.2d at 165 (prosecutor may respond in rebuttal to issues raised by defense counsel's closing arguments).

We also conclude that the evidence was sufficient to establish that both Reaves and Ms. Baylor carried, on or about their persons, the Uzi found under the seat of the car in the May 31 incident. *See Logan v. United States*, 489 A.2d 485, 491–92 (D.C.1985) (evidence sufficient for jury to find that all three occupants of car carried, on or about their persons, a pistol that had been tossed out of the vehicle). Therefore, the evidence was sufficient to allow the jury to find

Reaves guilty of carrying a pistol without a license irrespective of Baylor's guilty plea.

Huff moved for severance principally on grounds that the evidence was much greater against Reaves. We will reverse a denial of a severance motion only if there is a clear showing that the trial court abused discretion. *Johnson v. United States*, 596 A.2d 980, 987 (D.C.1991). We find no abuse of discretion here, where most, if not all, of the evidence against Reaves was also admissible against Huff. *See Hawthorne v. United States*, 504 A.2d 580, 585 (D.C.1986) (severance is justified by a claim of disparity only if the evidence against one defendant is *de minimis* as compared to his co-defendants); *Russell, supra,* 586 A.2d at 698 (severance is not required simply because there is more damaging evidence against one defendant).

Similarly, because the jury could well have concluded that Reaves was the principal and Huff an aider and abettor, the trial court did not err in giving an aiding and abetting instruction or in declining Huff's request to instruct the jury that some of the evidence was only admissible against one defendant, where Huff did not specify which evidence would not be admissible against him, and where the evidence presented against Reaves was circumstantially relevant in the government's case against Huff. *See Bayer v. United States*, 651 A.2d 308, 310–11 (D.C.1994) (for an aiding and abetting conviction, there must be evidence of the underlying crime by a principal, and evidence against the principal is, in some part, evidence against the aider and abettor); *Sutton v. United States*, 140 U.S.App. D.C. 188, 196, 434 F.2d 462, 470 (1970) (not error to deny the instruction where there was evidence that both defendants participated in the crime; the evidence against the co-defendant was circumstantial evidence against the appellant and corroborated that the crime occurred); *McAdoo v. United States*, 515 A.2d 412, 426 (D.C. 1986) (affirming case in which trial court refused to give the instruction because it would be inconsistent with the instruction on aiding and abetting).

**5.** In his collateral attack, in both the trial court and this court, Huff has been represented by an attorney different from the one who represented him at trial.

statement in counsel's cross-examination of a government witness. The witness, Pernell Matthews, was a crucial witness for the government, especially in its case against Huff because Matthews was the only witness who placed a gun in Huff's hand during the shooting incident that resulted in the murder of Leondos Wilkins. On direct examination, Matthews testified that he had known Reaves for several years and Huff for several months prior to the incident. After identifying the appellants in court, Matthews testified that he saw both Reaves and Huff arrive at the scene in a gray Renault Reliance and jump out of the car, run toward Wilkins's truck and fire at Wilkins. Although Matthews said he saw the assailants carrying two different guns, a nine millimeter [weapon] and an Uzi handgun, he did not specify which assailant carried which gun, nor could he see whose shots actually hit Wilkins. According to Matthews, Huff also fired at another individual and chased that individual down the street, and then Reaves and Huff got back into the gray car and backed the car down an alley. Matthews testified that he was certain the individuals he saw with the guns who shot at Wilkins were Reaves and Huff.

Each appellant was represented by his own retained attorney, who had represented him from the beginning of this case. Each attorney had also previously represented the other appellant in other matters. The two attorneys entered into a law partnership with each other during the period that these cases were pending for trial and they promptly informed the trial judge of this arrangement. In response, the judge conducted a hearing to determine whether it was appropriate for the two attorneys to continue in their respective representation of the appellants. During the hearing, the judge explored the relationships between the attorneys and each appellant and the relationship between the two attorneys, and inquired of both Reaves and Huff whether each understood the possibility of conflicts because of the association between the attorneys. The trial judge also advised the appellants of their right to have other appointed or retained counsel. Both appellants unequivocally affirmed, orally and in writing, their desire to have the attorneys each had retained to continue to represent

them. The trial court therefore decided to take no action with respect to the continued representation by trial counsel, and neither appellant challenges that decision in these appeals.

At trial, counsel for Reaves conducted the initial cross-examination of Matthews, questioning him extensively. Counsel impeached Matthews with the fact that Matthews initially lied to police about his name, that Matthews had three prior criminal convictions, that Matthews did not say anything about Reaves and Huff to police at the scene of the shooting and did not identify Reaves or Huff as the shooters in a statement he gave to police a week after the shooting, and that Matthews later affirmed the statement during his testimony before a grand jury. Counsel for Reaves also elicited testimony from Matthews in which Matthews claimed there were errors in previous statements he had signed and affirmed to the grand jury, questioned Matthews about inconsistencies in his prior statements and his trial testimony, and questioned Matthews on whether he believed that he was himself a suspect in Wilkins's murder when Matthews made photo identifications of Reaves and Huff.

Counsel for Huff then began her cross-examination of Matthews. After a few minutes of questioning, counsel asked for a bench conference regarding the use of a signed statement Matthews had given to Huff's investigator, indicating she intended to impeach Matthews with the statement. In the statement, Matthews gave descriptions of the shooters that were inconsistent with Huff's appearance, stated that he knew Huff, declared that Huff was not involved in the shooting, and stated that he had lied to police and to the grand jury when he identified Huff as one of the shooters. Thus Matthews's statement directly contradicted his trial testimony, particularly the only evidence presented that placed a gun in Huff's hand.

The government advised the court and counsel that if counsel for Huff cross-examined Matthews using the statement, the government would elicit testimony from Matthews that he made the statement because he was afraid that Reaves, who was incarcer-

ated in the same facility as Matthews at the time, would "get him." Counsel for Reaves stated that he had chosen not to use this particular statement during his cross-examination because use of the statement would be more damaging than helpful to his client's case. He requested that the court sanitize the statement. The trial court instead offered to give a cautionary instruction, observing that the reference to Reaves would not appear to be greatly prejudicial. Counsel for Reaves continued to object; the trial court noted the objection for the record and denied Reaves's motion to sever. Counsel for Huff then suggested the court recess for lunch to allow her to rethink the question of whether she would use the statement. When the trial resumed after the lunch break, counsel for Huff, without further explanation, stated that there would be no further cross-examination of Matthews. Thus the prior inconsistent statement was never brought to the jury's attention.

In his motion to vacate his conviction pursuant to D.C.Code § 23–110, Huff claimed that his trial counsel was ineffective because she failed to impeach Matthews with the statement, and because she did not conduct an adequate cross-examination of Matthews.[6] The judge who had presided at the trial, and was thus familiar with the circumstances relating to the cross-examination of Matthews, was no longer a member of the court when Huff filed his § 23–110 motion and requested an evidentiary hearing. The motion was assigned to Judge Hedge, who, after reviewing the motion, found sufficient reason to order the government to respond. In its opposition to the motion to vacate, the government argued that "the trial record incontrovertibly shows that defendant's trial counsel made a deliberate, tactical judgment" not to use the statement to impeach Matthews, and that the brief cross-examination of Matthews by counsel for Huff was not deficient in light of the extensive cross-examination conducted by counsel for co-defen-

dant Reaves. Huff submitted a copy of Matthews's signed statement with his motion. Neither party submitted an affidavit from Huff's trial counsel explaining her reasons for not cross-examining Matthews with the prior inconsistent statement.

After reviewing Huff's motion, the government's opposition, and the trial record, Judge Hedge denied the motion without an evidentiary hearing, ruling that a hearing was unnecessary since: (1) Huff's claim based on counsel's failure to impeach Matthews would not merit relief even if true, because not using the inconsistent statement was a tactical decision by counsel; and (2) Huff's claim regarding the brevity of cross-examination was without merit because it was vague, conclusory, and belied by the record. Judge Hedge then denied Huff's § 23–110 motion without having heard any explanation by trial counsel on this issue.

### III.

To prevail in an ineffectiveness of counsel motion, the defendant "must demonstrate both that his trial attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the error affected the outcome of the trial to his prejudice." *Simpson v. United States,* 576 A.2d 1336, 1337 (D.C.1990) (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)). In *Miller v. United States,* 479 A.2d 862 (D.C.1984), this court reviewed how such motions are to be treated by the trial courts:

The trial court must hold a hearing "unless the motion and files and records of the case conclusively show that the [defendant] is entitled to no relief." This Court has interpreted that clause to mean that an evidentiary hearing is required unless "the allegations of the motion itself are vague and conclusory, are wholly incredible, or, even if true, would merit no relief".... Because Sec. 23–110 is virtually a remedy

---

6. Huff also claims that his counsel was ineffective because she failed to call an alibi witness. We think that if a defendant seeks to assert a § 23–110 claim on grounds of failure to call a witness, it is not enough to simply assert in the moving papers the substance of the testimony the

witness was expected to give. More formal proof should be presented, such as an affidavit by the witness setting out with specificity what the witness would have testified to if called. *See Sykes v. United States,* 585 A.2d 1335, 1340 (D.C.1991).

of last resort, any question whether a hearing is appropriate should be resolved in the affirmative. . . . Where the appellant alleges that the representation of his trial counsel was ineffective, the necessity for a hearing is increased because "the record on direct appeal is ordinarily barren of the evidentiary facts which would either confirm or refute that allegation."

479 A.2d at 869–70 (citations omitted); *see also Hockman v. United States*, 517 A.2d 44, 48 (D.C.1986) (error to deny § 23–110 hearing where factual issues raised in the complaint "could not be resolved without evidence beyond the trial record").

 In many of the collateral attacks that come before us for review, the ineffectiveness of counsel claims involve a conflict regarding certain specified communications between counsel and the defendant, including questions of whether the communication was in fact made, or if it was, the substance of what was said. In almost every instance where the credibility of counsel versus the credibility of the defendant is at issue, the court can resolve the conflict only by conducting an evidentiary hearing. *See Samuels v. United States*, 435 A.2d 392, 395 (D.C. 1981) (per curiam) (where the dispute was whether the defendant instructed trial counsel to file an appeal, the trial court "could not conclusively resolve the dispute without a hearing, for witness credibility—typically reflected best through live testimony under oath—is key here"); *see also Rice v. United States*, 580 A.2d 119, 122–23 (D.C.1990). Similarly, where the defendant alleges that counsel failed to call a particular witness to testify on the defendant's behalf, counsel may have had valid reasons for not calling the witness, but because the reasons are usually not in the record, an evidentiary hearing is normally required. *See Hollis v. United States*, 623 A.2d 1229, 1233 (D.C. 1993) (even where the government submitted an affidavit from trial counsel giving several reasons why counsel did not interview a possible witness who might exonerate the appellant, appellant was entitled to an evidentiary hearing in which he could question counsel about the adequacy of those reasons); *Gray v. United States*, 617 A.2d 521, 524 (D.C. 1992) ("At the very least . . . the trial court

should have taken testimony from Gray's trial counsel, and perhaps from [the witness] as well," to determine if counsel investigated the witness and "to give [counsel] an opportunity to place [his reasons for not calling the witness] on the record in an evidentiary hearing.") Finally, in still other cases there is disagreement concerning whether the defendant informed counsel of the existence of the witness. That disagreement also can ordinarily be resolved only with an evidentiary hearing. *See Samuels, supra.*

 The claim made here is not the same as those discussed in the examples above. Here, Huff claims that counsel's failure to pursue a certain course of action amounted to ineffective assistance of counsel. That claim fails, however, if the course taken, or not taken, by counsel is explainable as a reasonable tactical choice. *See Parker v. United States*, 601 A.2d 45, 53 (1991). In some such cases, a review of the trial record will be sufficient to determine whether the decision was indeed tactical. In those circumstances no affidavit from counsel and no evidentiary hearing would be necessary. *See Alexander v. United States*, 409 A.2d 618, 620–21 (D.C.1979) (evidentiary hearing is required when the court cannot conclude from the record whether there was a valid tactical reason for not pursuing a course of action). That is particularly so where the judge ruling on the motion is the same judge who conducted the trial because "the trial judge, who has seen the defense attorney in action and watched the evidence unfold, is in [the best] . . . situation . . . to determine whether there is any appreciable possibility that a hearing could establish . . . constitutionally defective representation. . . ." *Sykes, supra* note 5, 585 A.2d at 1340.

 Under the particular facts of this case, however, we hold that the trial court erred in denying Huff's § 23–110 motion on the pleadings and trial record alone. While the record reveals that counsel was aware of the course that could be taken, and that counsel gave careful thought concerning the course of action to be taken, we are not satisfied, under the circumstances presented here, that the record by itself is sufficient to

establish that counsel's decision was a reasonable tactical choice. The factors that influence this determination are the following: (1) Matthews was the only witness who testified that Huff had a gun in his hand; (2) in the impeaching material that counsel did not use, Matthews directly retracted that testimony; (3) the judge ruling on the motion was not the same judge who had presided at the trial under circumstances where the trial judge would have been in a better position to determine whether the additional impeachment would, or would not, have aided Huff's case; (4) the government's promised redirect examination would have been directly harmful to only the co-defendant; and (5) the professional relationship between the two trial attorneys. Under all of these circumstances, the better course would be for the trial court to require some explanation by trial counsel before rejecting the defendant's claim. *See Smith, supra,* 608 A.2d at 131. It may well be that an affidavit by counsel would have sufficed if initially presented to the trial court with the papers filed, but we do not decide that point because no affidavit was submitted in this case.

Accordingly, we remand[7] the case to the trial court to allow the trial court to receive testimony from Huff's trial counsel. Although we do not address the ineffectiveness of counsel claim regarding the length of cross-examination, the trial court should explore that issue as well.

*Nos. 93–CF–131 and 93–CF–250 Affirmed;*

---

7. Because we remand the case (rather than the record), the matter is returned to the trial court for all purposes. *See Bell v. United States,* 676 A.2d 37, 41 (D.C.1996). If, after the conclusion of the proceeding in the trial court, either party wishes to obtain appellate review, a new notice of appeal must be filed. *Id.*