William D. HAMMOND, Appellant,

v.

UNITED STATES, Appellee.

No. 84–365.

District of Columbia Court of Appeals.
Argued Oct. 15, 1985.
Decided Dec. 5, 1985.

---

Lloyd T. Shanley III, Washington, D.C. for appellant.

Richard A. Levan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before BELSON, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Following denial of his motion to suppress, appellant was convicted by a jury of carrying a pistol without a license, D.C. Code § 22–3204 (1981), and acquitted on charges of possession of an unregistered firearm, D.C.Code § 6–2311(a), and unlawful possession of ammunition, D.C.Code § 6–2361(c).[1] On appeal he contends that the trial court erred in denying his motion to suppress the pistol and in admitting into evidence two photographs of the interior of the car where the pistol was found. Appellant's first contention fails under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and consequently only his contention regarding the photographs requires discussion. We hold that the trial court erred in admitting the photographs into evidence but that their admission was harmless error. Accordingly, we affirm.

## I

The only issue at trial was whether appellant knew that there was a pistol under the front seat armrest of a car belonging to his friend when appellant was arrested for driving that car while under the influence of alcohol, D.C.Code § 40–716(b) (1981). At trial, Sergeant William J. Norman testified that he had observed a Dodge Charger automobile travelling westbound in the eastbound lanes of the Benning Road bridge at 3:00 a.m. on June 21, 1983. Norman stopped the car, which was driven by appellant, asked appellant to step outside the car, and attempted to search its interior. Because the driver's door would not open, he entered the car through the front passenger's side. Norman's attempt to open the driver's door from inside the car was impeded by a folddown center armrest. When he folded up the armrest so that he could reach the driver's door, he saw a pistol under the armrest.[2]

Appellant objected to admission of the photographs of the interior of the car on the ground that they were prejudicial because they portrayed the butt of the gun as "protruding from underneath the armrest" while the gun had been hidden from view. The prosecutor argued that Officer Norman's testimony had clarified that the gun was "completely hidden by the armrest" when he entered the car, and that the only purpose for introducing the photographs was to "corroborate there was a gun on the seat." The prosecutor advised the court that he did not intend in closing arguments to the jury to suggest that the gun was in a different position when it was found. The court agreed that the photographs could be admitted for that purpose and, *sua sponte*, stated that it would give a cautionary instruction. Defense counsel protested, and the prosecutor responded that the photograph was taken to show

---

1. The indictment incorrectly cited the subsection of the D.C.Code. The correct citation is D.C.Code § 6–2361(3) (1985 Supp.). The error was harmless. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

2. At the time of the search, Norman already had properly arrested appellant for driving under the influence of alcohol. Evidence of this arrest and the events leading up to it were not presented at trial.

there was a gun in the vicinity of the armrest and that he would make it clear to the jury where the gun was when the officer entered the car. The trial court overruled the defense objection, and defense counsel noted his objection and requested the cautionary instruction.

## II

"The determination whether to admit photographs as demonstrative evidence is within the trial court's sound discretion"; therefore, we must decide whether the trial judge abused that discretion in admitting the inaccurate photographs. *Brown v. United States*, 464 A.2d 120, 123 (D.C.1983); *March v. United States*, 362 A.2d 691, 704 (D.C.1976). Generally, " 'a photograph is viewed merely as a graphic portrayal of oral testimony, and becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness.' " *Brown, supra,* at 123 (quoting McCormick on Evidence § 214, at 530 (2d ed. 1972)). The requirement that photographs accurately portray the relevant facts is not absolute; variances may be corrected by instructions. The crucial requirement is that the jury adequately be made aware of any variances between a photograph and reality. *March, supra,* 362 A.2d at 704. That photographs may be cumulative in light of the testimonial evidence does not render them inadmissible either, "provided that their probative value outweighs any prejudice from their use." *Pittman v. United States*, 375 A.2d 16, 19 (D.C.1977) (citations omitted).

Appellant contends that the trial court erred in admitting the photographs into evidence because (1) they were not probative of any relevant fact, nor strongly connected to any issue in the government's case; (2) they were cumulative to the testimony of Sergeant Norman and the owner of the car describing the car's interior, and hence unnecessary to the government's case in chief; and (3) the prejudice arising from the photographs outweighed their probative value because they seriously undercut the defense theory that appellant was unaware of the pistol's existence; hence cautionary instructions were inadequate to remove the prejudice. We agree that the photographs were not probative of any relevant fact but conclude under the circumstances that no reversible error occurred.

In *Burleson v. United States*, 306 A.2d 659 (D.C.1973), on which appellant relies, this court held that introduction of a pistol was error because its "connection with appellant was too conjectural and remote." *Id.* at 662. There the defendant was charged with assault with a dangerous weapon. A gun was seized almost five hours after an alleged assault from a car in which the defendant had been a passenger shortly before the seizure, and introduced as similar to the gun which the defendant allegedly used. The only disputed issue was whether defendant used the gun during his assault of complainant. In finding error the court quoted Professor Wigmore's observation that "there is a general mental tendency, when a corporal object is produced as proving something, to assume, on sight of the object, all else that is implied in the case about it. The sight of it seems to prove all the rest." 7 Wigmore, Evidence § 2129 (3d ed. 1940). *Id.*

In the instant case the photographs of the interior of the car were remote and conjectural to the issue in the case. The government did not need to introduce the photographs for their purported purpose since its case-in-chief included other demonstrative evidence—the pistol—which corroborated the testimony that a pistol was found in the car. Nor were the photographs particularly probative of any relevant fact in the case. To the extent that the photographs were connected to the only issue in the case, the prejudicial impact which Professor Wigmore describes was clearly present. Moreover, contrary to the observation of the trial court, the photographs did more than "exemplify the fact that the gun was [there]," in proximity to

the armrest, and indicate the size of the armrest relative to the size of the pistol. The suggestivity of the photographs was directly adverse to appellant's defense that he was unaware of the pistol. *See Williams v. United States*, 382 A.2d 1, 5–6 (D.C.1978) (introduction of mug-shot was prejudicial where it strongly implied criminal activity); *Barnes v. United States*, 124 U.S.App.D.C. 318, 321, 365 F.2d 509, 512 (1966) (same).

We find nothing in the record, however, to suggest that the photographs were used in a manner to obscure their distortion of reality. *See Letsinger v. United States*, 402 A.2d 411, 414–15 (D.C.1979) (introduction of mugshot held not reversible error where the government had a legitimate purpose for introducing the photograph and the manner of introduction and cropping of the photograph did not draw attention to defendant's prior criminal record). The trial court reasoned that the introduction of the photographs would be "fair" in view of Sergeant Norman's testimony and the prosecutor's promise to tell the jury that the gun was not in view when the officer entered the car. *See generally Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979) (trial court abuses its discretion if no valid reason is given or none can be discerned to indicate that an informed choice among alternatives was made). The prosecutor told the jury in closing argument that the gun had not been visible to Sergeant Norman when he entered the car, and neither the prosecutor nor any government witness presented a contrary suggestion during the trial. In addition, appel-

lant's trial counsel argued to the jury that the pistol, which was small and easily concealed, had not been visible when Sergeant Norman had entered the car. At the close of all the evidence the trial court instructed the jury on the precise variance between the photographs and the reality which Sergeant Norman found.[3] *Smith v. United States*, 315 A.2d 163, 167 (D.C.) (jury presumed, in absence of indication in the record, to follow court's instruction), *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974). This was a simple, single issue case. Under these circumstances, we are satisfied that the jury was not under any misapprehension about the photographs, and that any error was harmless. *Kotteakos, supra*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Accordingly, since we find no merit in appellant's other contention that he is entitled to a new trial because of the jury's inconsistent verdicts,[4] and we need not reach the question of whether appellant had a reasonable expectation of privacy in the automobile, we affirm.

*Affirmed.*

**3.** The trial court instructed the jury:

Ladies and gentlemen, with respect to exhibits number one and two, the photos, the Government has told you that these are pictures taken of the interior of the car and the arm rest. The arm rest is up and the gun has been withdrawn on the seat so you can see the gun. You can see the arm rest, but as the Government argued to you originally, the officer testified when he got in there, you could not see the gun. The arm rest was down, so those photos are admitted with the understanding that the gun was moved out so that you could see it, for the purposes of taking pictures. It does not represent, and counsel both agree to this, it does not represent how the car looked, say, when the officer originally got in. In other words, the gun was not visible. It's been moved out for the purposes of taking the photos.

**4.** *United States v. Powell*, —— U.S. ——, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932); *Steadman v. United States*, 358 A.2d 329, 332 (D.C.1976).