UNITED STATES, Appellant,

v.

Kevin L. HARRIS, Appellee.

No. 92–CO–211.

District of Columbia Court of Appeals.

Argued Sept. 25, 1992.
Decided Nov. 30, 1992.

Mary–Patrice Brown, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, John F. Cox, III, and Linda Otani McKinney, Asst. U.S. Attys., Washington, DC, were on the brief, for appellant.

Mitchell S. Baer, Washington, DC, appointed by the court, for appellee.

Before SCHWELB, WAGNER and KING, Associate Judges.

KING, Associate Judge:

This case comes to us on an expedited appeal filed by the government from an order granting a motion to suppress tangible evidence. We reverse.

On August 27, 1991, at approximately 2:20 a.m., Officers Miller and Osborne were travelling northbound on Minnesota Avenue, in a marked vehicle, at the intersection of Minnesota Avenue and Benning Road, Northeast. The officers observed a vehicle, travelling eastbound on Benning Road, fail to stop for a red traffic signal. The vehicle turned left onto Minnesota Avenue, and the officers followed the vehicle and activated their emergency equipment to signal the vehicle to stop. The vehicle, which was occupied by the driver and two passengers, stopped without incident and parked approximately one foot from the curb without obstructing traffic. Prior to exiting their vehicle, the officers were informed by the police dispatcher that the car was registered in the name of Kevin Harris and was not listed as stolen.

Officer Miller approached the driver's side while Officer Osborne stood behind the passenger door. Officer Miller asked the driver, Robinson, for his license and vehicle registration. Robinson produced the registration, but he did not possess a valid driver's license, stating that he was unsure in which jurisdiction he possessed a license.

After obtaining confirmation from the dispatcher that Robinson did not possess a D.C. license, Officer Miller placed him under arrest for driving without a license. The officer then searched and handcuffed Robinson, and locked him in the back seat of the police cruiser.

Officer Miller then returned to the vehicle to conduct a search. Officer Osborne, who had remained at the car, asked the passengers to exit the car. As the front passenger, later identified as appellee Kevin Harris, began to step out of the car, Officer Miller, standing at the driver's side window, observed a silver-colored handgun at Harris's feet. The police subsequently found a brown suede bag, containing 15 rounds of ammunition for the gun, on the vehicle floorboard between Harris's legs.

Appellee was then arrested and charged with carrying a pistol without a license, D.C.Code § 22–3204 (1989 & Supp.1992), and possession of an unregistered firearm and accompanying ammunition D.C.Code §§ 6–2311, 6–2361 (1989).

Appellee's motion to suppress the pistol and ammunition was granted by the trial court on January 29, 1992. Preliminarily, the court found that appellee, after submitting to the officer's order to get out of the car, was seized within the meaning of the Fourth Amendment. Stating that the issue was "whether law enforcement officers can ask passengers to get out of a car stopped for running a red light after arresting the driver for traffic violations without basis in suspicion of any other criminal activity," the court found that there was no reason to search or impound the vehicle. The court further determined that the decision to order appellee out of the vehicle was unlawful and that the evidence must be suppressed. "Simply stated there was no reason for the police to order Mr. Harris out of the car after having arrested Mr. Robinson.... There was nothing about this car or its occupants ... to justify the seizure of Mr. Harris."

The government moved for reconsideration relying on *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which the government argued extends a search incident to arrest to the interior of a car. The motions judge observed that *Belton* requires that the scope of a search be " 'strictly tied to and justified by the circumstances which rendered its initiation permissible.' " *See Belton, supra*, 453 U.S. at 457, 101 S.Ct. at 2862 (quoting *Chimel v. California*, 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969) (internal citations omitted)). The motions judge concluded that there was nothing in the circumstances surrounding the driver's arrest that warranted the search of the passenger compartment for evidence of the traffic offense, nor was there any reason, under the circumstances, for the officers to fear for their safety. For those reasons, he denied the government's motion for reconsideration.

The government's appeal of the grant of the motion to suppress followed. The government urges reversal based upon three separate and independent grounds: (1) appellee lacked standing to challenge the search, (2) under *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the police may properly direct passengers to exit the vehicle when the driver has been charged with a traffic violation, and (3) the search of the passenger compartment of a vehicle, after the driver is taken into custody, is a valid search incident to the arrest pursuant to *Belton, supra*, 453 U.S. at 454, 101 S.Ct. at 2860. We do not reach the first two contentions since we are satisfied that the government must prevail on the third claim. Accordingly, we reverse.

Our inquiry begins with *Belton*, which involved the search of a motor vehicle on the New York Freeway after a stop for exceeding the speed limit. There were four men in the car and none of them owned the vehicle or was related to the owner. While conversing with the occupants, the officer smelled burnt marijuana and observed an envelope, inside the vehicle, which he associated with that substance. The officer then ordered all four occupants out of the car, conducted a pat-down of each, and then placed them in four separate locations. He then removed the envelope from inside of the car and found that it contained marijuana. Each occupant was read his rights[1] and searched. The officer then searched the passenger compartment of the car, during the course of which he discovered a jacket containing cocaine, which was owned by Belton. At his trial for cocaine possession, Belton sought to suppress the drugs seized from the jacket pocket. It is the propriety of the search of the vehicle, which resulted in the seizure of the cocaine, that was considered by the Supreme Court.

In its analysis, the Court observed that "[a]lthough the principle that limits a search incident to a lawful custodial arrest may be stated clearly enough, courts have discovered the principle difficult to apply in specific cases." *Belton, supra*, 453 U.S. at 458, 101 S.Ct. at 2863. It cited several cases from the federal system where different courts, in comparable factual circumstances, had reached contrary results. *Id.* at 459, 101 S.Ct. at 2863. The Court also quoted a respected commentator who expressed a preference for a rule that could be readily understood by those who are called upon to apply it—

> Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be "literally impossible of application by the officer in the field."

*Id.* at 458, 101 S.Ct. at 2863 (citing LaFave, *"Case-by-Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma*, 1974 SUP.CT.REV. 127, 141).

The *Belton* Court also observed that it had been faced with a similar dilemma, eight years earlier, when it was presented with the question of whether a complete search of the person was permissible for arrests for minor offenses—in that case, as in this one, an arrest for driving without a license in the District of Columbia. *Id.* at 459, 101 S.Ct. at 2863; *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). In *Robinson*, the Court rejected the suggestion that the determination of the permissible scope of the search, should be left to a case-by-case analysis of whether one of the accepted bases for a search of the person incident to an arrest was present, before determining whether the search was valid. It concluded that it should adopt a so-called "bright line" rule and held that in the "case of a

---

1. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

lawful custodial arrest a full search of the person is ... a 'reasonable' search under [the Fourth] Amendment." *Ibid.*

Similarly, in *Belton,* the Supreme Court determined that it was desirable to "establish the workable rule this category of cases requires...." *Belton, supra,* 453 U.S. at 460, 101 S.Ct. at 2864. It accordingly held that:

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

*Ibid.* [2] The Court also held that police were permitted to examine the contents of any containers found inside of the passenger compartment whether they are opened or closed. *Id.* at 460–61, 101 S.Ct. at 2864.

In the instant case, the government relied, in part, upon *Belton* in its initial opposition to appellee's motion to suppress. In his order granting the motion to suppress, the motions judge did not address any of the issues raised by that case. The government then moved for reconsideration emphasizing *Belton* and its holding. The motion to reconsider was denied on February 22, 1992, in a one sentence order referring to the previous order granting the motion to suppress, with the notation that a supplemental opinion would be forthcoming.

After the briefs were filed in this appeal, counsel for appellee provided us with a copy of the supplemental opinion, issued by the motions judge in August 1992, in which the *Belton* issue is addressed. The motions judge distinguished *Belton* by identifying, what he characterized as, material factual differences between the two cases. Specifically the motions judge observed that in *Belton,* all occupants of the vehicle were arrested before the search, and the officer in *Belton,* unlike the police in this case, had probable cause to believe that

contraband was present inside the car. Further, the motions judge pointed out that the officers here had no basis for searching the vehicle after appellee's arrest for a traffic violation, nor did the officers reasonably fear for their safety. Finally, the court observed that the search of the vehicle came well after the arrest of the driver and was therefore not contemporaneous with "potentially threatening circumstances confronting the officer."

We agree that there are factual differences between *Belton* and this case, as observed by the motions judge. We note, however, that this court has previously held that similar factual differences are not such that the rule of *Belton* should not apply. In short, we are bound by directly applicable authority, that cannot be distinguished from the facts of this case, which holds that a search of the vehicle under these circumstances is proper. *See Staten v. United States,* 562 A.2d 90 (D.C.1989).

*Staten* involved a vehicle, with a driver and two passengers, which was stopped after it made an illegal U-turn at 2:45 a.m.[3] The driver was asked to step out of the car and the officer thereafter administered a breathalyzer test which resulted in the driver's arrest for driving under the influence. The driver was then searched; however, no weapons or contraband were recovered. Meanwhile, Staten, the backseat passenger, who had been asleep, awoke and informed the officers that the vehicle belonged to him. The officers then ordered Staten and the other passenger out of the car and they too were searched with negative results. The officers then made a WALES check and determined that the vehicle was in fact registered to Staten. They then proceeded to search the car. During the search, they discovered the glove compartment was locked. One of the officers then took the keys from the vehicle's ignition, unlocked the glove compart-

---

**2.** In so doing, the Supreme Court stated explicitly that it adhered to the principles established in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), "regarding the basic scope of searches incident to lawful custodial arrests." *Belton, supra,* 453 U.S. at 460 n. 3, 101 S.Ct. at n. 3.

**3.** The facts set forth here were taken from both the majority and the dissenting opinions. *See Staten, supra,* 562 A.2d at 91, 94–95.

ment, and discovered a loaded pistol which formed the basis for the charge against Staten. On appeal, relying upon *Belton*, we upheld the search holding that "[g]iven the fact that the police lawfully arrested an occupant of appellant's automobile, they were entitled to search the passenger compartment and any containers located therein incident to that arrest." *Staten, supra*, 562 A.2d at 93.

■ For reasons that have not been explained, the government never cited *Staten* to the motions judge in the instant case, and there is no mention of that case in any of the orders issued in the trial court. The government places great reliance on *Staten* in this court, and appellee in his brief makes no effort to distinguish it. Appellee criticizes the case and asks that it be "re-evaluated and overruled." We, of course, can overrule a decided case only with the court sitting en banc. See *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

■ At oral argument appellee attempted to distinguish *Staten* by emphasizing the trial court's conclusion, voiced in the August 1992 opinion denying reconsideration, that the "search was neither contemporaneous with, nor was justified by potentially threatening circumstances confronting the officer." In this case the officer testified that appellee was arrested, handcuffed, and placed in the scout car. The next action taken by the police was to proceed to search the vehicle. That search was, at minimum, as contemporaneous as the search in *Staten* where the officers after arresting the driver: (1) read the driver his rights, (2) searched him, (3) ordered the two passengers out of the car, (4) searched them, (5) made a WALES check to determine the ownership of the vehicle, (6) returned to Staten's vehicle, (7) found the glove compartment locked, (8) took the keys from the ignition, (9) verified with Staten which key unlocked the glove compartment, (10) used the key to unlock the glove compartment, and then conducted the search and recovered the weapon. On those facts the *Staten* court specifically found that the search of the glove compartment was "contemporaneous" with the ar-

rest of the driver. *Staten, supra* 562 A.2d at 91. No less can be said of the search conducted here since it occurred far more closely after the restraint of the driver than was the case in *Staten.*

The federal courts that have addressed this point are in agreement that a search of a vehicle, occurring shortly after the driver, or an occupant, has been placed under arrest and restrained, is contemporaneous. *See United States v. White*, 871 F.2d 41, 44 (6th Cir.1989) (*Belton* rule allows search of vehicle incident to a lawful arrest even if the arrestee is handcuffed and separated from his vehicle); *United States v. Karlin*, 852 F.2d 968, 972 (7th Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989) (permitting search of van after arrestee is handcuffed and placed in rear of squad car); *United States v. McCrady*, 774 F.2d 868, 871–72 (8th Cir. 1985) (finding that although arrestee had been removed from the scene, the search was incidental to and contemporaneous with his arrest); *United States v. Cotton*, 751 F.2d 1146, 1149 (10th Cir.1985) (allowing search of vehicle when arrestee was handcuffed and outside of the vehicle). *But see United States v. Vasey*, 834 F.2d 782, 787 (9th Cir.1987) (holding that search conducted between 30 and 45 minutes after defendant was arrested, handcuffed and placed in rear of police vehicle lacked contemporaneity requirement of search incident to arrest).

Since we can find no basis for concluding that *Staten* should not apply to the facts of this case, we must reverse the order of the trial court.

*So Ordered.*